UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENIS MARTYNENKO,

Petitioner,

v.

PAMELA BONDI, Attorney General of the United States, et al.,

Respondents.

CASE NO. 2:26-cv-00626-JHC

ORDER

**I**

**INTRODUCTION**

This matter comes before the Court on Petitioner Denis Martynenko's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has considered the materials filed in support of and in opposition to the petition and the applicable law. Being fully advised, for the reasons below, the Court GRANTS the Petition.

**II**

**BACKGROUND**

The facts are undisputed. Petitioner, born in Ukraine, is a noncitizen who arrived in the United States on or about April 11, 1997, at the age of 8, as an immigrant refugee. *See* Dkt. # 9-2 at 2–3. Although Petitioner apparently became a legal permanent resident upon entry to the

ORDER - 1

United States, *see id.*, he was later charged with removability under Sections 237(a)(2)(A)(iii) and 237(a)(2)(A)(ii) of the Immigration and Nationality Act (INA)[1] after being convicted of two counts of possession of a stolen motor vehicle at the age of 19.  *See* Dkt. # 8 ¶ 6.  Petitioner was without counsel during these proceedings.  *Id.* ¶ 7.  And on January 21, 2009, at the end of these proceedings, an immigration judge ordered Petitioner removed.  *Id.*  The Board of Immigration Appeals dismissed Petitioner's appeal on April 22, 2009.  *Id.* ¶ 8.

On October 5, 2010, Petitioner was released from state custody and transported to the Northwest Immigration Processing Center (NWIPC).  *Id.* ¶ 9.  Petitioner then filed a Petition for Review with the Ninth Circuit, which was dismissed on January 10, 2011.  *Id.* ¶¶ 10–11.  The government then sought to remove Petitioner to Ukraine.  *Id.* ¶ 11.  As of June 6, 2011, however, the government was still awaiting travel documents for Petitioner and so he was released on an Order of Supervision (OSUP) to face an outstanding warrant in Spokane County.  *Id.* ¶¶ 12–13; Dkt. # 9-3 (OSUP).  From November 2012 to May 2019, Petitioner was convicted another four times of retail theft, stolen vehicle possession, and drug charges, and served multiple prison sentences.  Dkt. # 8 ¶¶ 14–17.  His most recent conviction in 2019 resulted in a sentence of 105 months.  *Id.* ¶ 17.

After Petitioner's release from state custody on November 19, 2025, immigration authorities revoked his OSUP and transported him to NWIPC for detention.  *Id.* ¶¶ 18, 20; Dkt. # 9-5 (warrant for arrest); Dkt. # 9-6 (revocation notice citing 8 C.F.R. § 241.4); Dkt. # 9-7 (custody determination).  The Notice of Revocation of Release (the Notice) recounts the various

---

[1] Habeas petitions and their associated briefing commonly refer to the sections of the INA as they appear in the enrolled bill and not by citation to the United States Code.  These sections of the INA are codified at 8 U.S.C. § 1227(a)(2)(A).  Section 1227(a)(2)(A)(ii) provides that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . is deportable."  Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

ORDER - 2

criminal convictions and states that there are "changed circumstances," but does not elaborate on them. *See* Dkt. # 9-6 at 2. On February 10, 2026, the government submitted a new travel document request to the government of Ukraine. Dkt. # 8 ¶ 22. Respondents state that the "Ukrainian government needs the Petitioner's new information and identity documents to render a decision" on whether to accept Petitioner. *Id.* It also states that the government "is currently in the process of gathering this information[.]" *Id.*

Petitioner filed this habeas petition on February 20, 2026. *See* Dkt. # 1. He has been subject to a final order of removal since April 2009 and has been in detention since November 19, 2025. Petitioner asserts four grounds for habeas relief. First, he argues that his prolonged and ongoing detention without a reasonably foreseeable end is unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. # 1 at 20–21. Second, he argues that any future re-detention violates his rights to due process under the Fifth Amendment. *Id.* at 21. Third, he argues that the Fifth Amendment, INA, and Convention Against Torture and its implementing regulations require that he be provided notice and an opportunity to respond before any attempt to remove him to a third country. *Id.* at 22–23. Fourth, he argues that the Fifth and Eighth Amendments prevent his removal to a third country. *Id.* at 23–25. Petitioner asks for immediate release from detention under conditions of supervision.

### III

#### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

ORDER - 3

The parties agree that Petitioner is detained under 8 U.S.C. § 1231. Under § 1231(a), to facilitate removal, the government must hold a noncitizen in custody during the 90-day "removal period" after entry of a final removal order. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2); *see also Zadvydas*, 533 U.S. at 682. After the removal period expires, Section 1231 provides that a noncitizen "removable under [§] 1227(a)(2)," like Petitioner, "*may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added). Even so, the government cannot detain such a noncitizen indefinitely. *See Zadvydas*, 533 U.S. at 689, 699; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1115 (9th Cir. 2010) (*Zadvydas* applies to noncitizens "detained pursuant to Section 1231(a)(6) who were removable under . . . 1227(a)(2)").

In *Zadvydas*, the Supreme Court held that Section 1231 "limits [a noncitizen]'s post-removal-period detention to a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id.* at 689. The Supreme Court determined that it is "presumptively reasonable" for the government to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual. *Id.* at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* Expiration of the six-month period does not mean that a petitioner is automatically entitled to relief, but "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* If the government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.* at 699–701.

Petitioner contends that his continued detention contravenes his constitutional rights because the 90-day removal period under 8 U.S.C. § 1231(a)(1)(A) has long since expired, the presumptively reasonable six-month period of continued detention under *Zadvydas* has passed,

ORDER - 4

and there is no significant likelihood of removal because Ukraine will not issue travel documents to detainees in Petitioner's position. *See* Dkt. # 1 at 20–21. Petitioner also says that the government has taken no steps to remove him to a third country. *Id.* He thus argues that he is entitled to release and that the burden is on Respondents to rebut the showing. *Id.*

Respondents counter that the reasonable six-month period under *Zadvydas* has not elapsed because Petitioner has only been in custody since November 2025: for three and a half months. Dkt. # 7 at 6. Respondents also contend that Petitioner's removal is reasonably foreseeable because there are ongoing efforts to obtain travel documents from Ukraine. *Id.* at 7.

The six-month period of detention under *Zadvydas* has elapsed. Petitioner's removal order became final when the Ninth Circuit dismissed Petitioner's appeal from the BIA. *See* Dkt. # 8 ¶¶ 10–11. The Ninth Circuit's dismissal triggered the 90-day removal period under 8 U.S.C. § 1231(a)(1)(A). After those 90 days, Petitioner's continued detention was presumptively reasonable for a six-month period. This period concluded on October 10, 2011. Dkt. # 8 ¶¶ 13–17. While Respondents contend that the six-month period should run from the most recent period of detention, courts in this district have repeatedly rejected this interpretation of *Zadvydas*.[2]

The Court concludes that Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Petitioner asserts that his removal is not reasonably foreseeable because he lacks proof of

---

[2] *See, e.g.*, *Jerez Sosa v. ICE*, 2026 WL 523274, at *3 (W.D. Wash. Feb. 25, 2026) (citation modified) (quoting *Yuksek v. Bondi*, 2026 WL 60364, at *2 (W.D. Wash. Jan. 8, 2026)) ("The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered."); *see also Eshaghpour v. Bondi*, 2026 WL 100603 (W.D. Wash. Jan. 14, 2026); *Jaranow v. Bondi*, 2026 WL 35864 (W.D. Wash. Jan. 6, 2026); *Do v. Scott*, 2025 WL 3496909 (W.D. Wash. Dec. 5, 2025); *Tang v. Bondi*, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025); *Phong Thanh Nguyen v. Scott*, 796 F. Supp. 3d 703, 721 (W.D. Wash. 2025).

ORDER - 5

Ukrainian citizenship, without which the Ukrainian government will not grant a travel document request.  *See* Dkt. # 1 at 20.

And Respondents have not rebutted this showing.  Respondents say that they first sent a travel document request to the Ukrainian government on February 10, 2026, but that the Ukrainian government "needs the Petitioner's new information and identity documents to render a decision," presumably on whether it will grant Petitioner travel documents.  *See* Dkt. # 8 ¶ 22.  Respondents say that they are "currently in the process of gathering this information," *id.*, and that, since these efforts are "active and promising," Dkt. # 7 at 7, Petitioner's removal is reasonably foreseeable, permitting his continued detention.  But "a representation that good-faith efforts to effectuate removal continue is insufficient to rebut Petitioner's showing."  *Castillo Rivas v. Bondi*, 2026 WL 295705, at *3 (W.D. Wash. Feb. 4, 2026) (citing *Zadvydas*, 533 U.S. at 702); *accord Pham v. Scott*, 2026 WL 238994, at *5 (W.D. Wash. Jan. 29, 2026) ("an assertion of good-faith efforts to secure removal . . . does not make removal likely in the reasonably foreseeable future.").

The Court thus concludes that Petitioner's ongoing detention violates *Zadvydas* and he is therefore "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c).  Accordingly, it GRANTS the Petition.[3]

---

[3] Because the Court concludes that Petitioner's continued detention is unconstitutional under *Zadvydas*, it need not reach his argument that principles of due process entitle him to protections against any future re-detention.  *See* Dkt. # 1 at 21.

Also, in the case's current posture, Petitioner's request to enjoin Respondents from removing him to a third country (i.e., a country other than Ukraine) is not ripe.  Similar to the situation in *Tran v. Bondi*, 2025 WL 3725677, at *7 (W.D. Wash. Dec. 24, 2025), in which the court found such a request unripe, Respondents here assert that they do not seek to remove Petitioner to any country other than Ukraine and, accordingly, are pursuing efforts to obtain a travel document from only that country.  *See* Dkt. # 8 ¶ 22 (travel document request sent February 10, 2026); Dkt. # 7 at 9 ("[a]ll current removal efforts are directed solely at Ukraine"); *Tran*, 2025 WL 3725677, at *7 (noting that the government had "begun the process of securing travel documents for [the petitioner's] removal to Vietnam, country of origin, in finding issue unripe).  And there is no indication in the record that any such third-country removal is likely to occur.

ORDER - 6

## IV

### CONCLUSION

For the reasons above, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS as follows:

(1) Respondents shall release Petitioner from detention within 24 hours of this order. Upon release, Petitioner shall be subject to the conditions of his most recent order of supervision or on conditions otherwise compliant with 8 U.S.C. § 1231;

(2) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate;

(3) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf may not remove Petitioner to any third country unless and until he is provided with adequate notice and a hearing before a neutral decision maker to determine whether such removal is appropriate; and

(4) The Clerk shall send uncertified copies of this Order to all counsel of record.

Dated this 20th day of March, 2026.

John H. Chun
United States District Judge

---

Finally, the Court also does not find ripe Petitioner's request for an order preventing his removal to a third country where he is likely to face torture. Again, the record does not reflect any imminent threat of third country removal, and this Order already grants Petitioner notice and an opportunity to be heard before any third country removal may occur. *See Kara v. Bondi*, 2026 WL 322772, at *5 (W.D. Wash. February 6, 2026) (declining to reach issue because it was unripe).

ORDER - 7